## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| IMAGELINE, INC., | : | |
| Plaintiff, | : | |
| | | CIVIL ACTION NO. |
| v. | : | |
| | | 1:09-CV-1534-MHS |
| SALEM COMMUNICATIONS | : | |
| CORPORATION, et al., | | |
| | : | |
| Defendants. | | |

## **ORDER**

This copyright infringement action is before the Court on motions by

defendant Salem Communications Corporation (Salem) to dismiss for lack of

personal jurisdiction and improper venue and by defendant OnePlace, LLC

(OnePlace), to dismiss or transfer venue to the Eastern District of Virginia.

For the following reasons, the Court grants both motions.

## Background

Plaintiff Imageline, Inc. (Imageline), is in the business of creating and

licensing original digital illustrations and designs. Salem is a holding

company that owns numerous companies in the broadcast and media

industry.  OnePlace is a fourth-tier subsidiary of Salem in the business of

offering Christian-focused content over the internet and other media.

OnePlace owns the domain name "crossdaily.com" and operates a website

under that name.  Imageline alleges that Salem and OnePlace used and

distributed various images on crossdaily.com that infringe Imageline's

copyrights.

## Discussion

### I.    Salem's Motion to Dismiss

Salem moves to dismiss Imageline's complaint due to lack of personal

jurisdiction and improper venue.[1]  Salem relies on the declaration of its vice-

president, Christopher J. Henderson, who states that Salem is incorporated

in Delaware and headquartered in California; is not registered to do business

and does not do business in Georgia; has never maintained a registered agent

for service in Georgia; has no employees, mailing address, telephone listing,

---

[1] The Court need not separately address venue.  If the Court lacks personal
jurisdiction, the question of venue is moot.  If the Court has personal jurisdiction,
venue is proper.  See 28 U.S.C. § 1400(a) (copyright action may be brought in "the
district in which the defendant or his agent resides or may be found") and
§ 1391(c)("a defendant that is a corporation shall be deemed to reside in any judicial
district in which it is subject to personal jurisdiction at the time the action is
commenced").

2

office space, or any corporate records or documents in Georgia; and does not advertise in magazines or newspapers, on radio or television, or via direct mail in Georgia. (Henderson Decl. ¶¶ 4-11.) According to Mr. Henderson, Salem is the ultimate parent, through two intermediary corporations, of OnePlace, but it has no direct ownership interest in OnePlace or crossdaily.com. (Id. ¶ 3.) Salem is also the ultimate parent of several other corporate entities that own several radio stations and related real property in Georgia. (Id. ¶ 12.) Salem argues that given these facts, it does not have the constitutionally required minimum contacts with Georgia to permit this Court to exercise personal jurisdiction over it.

In response, Imageline argues, first, that Salem's relationship with its subsidiaries is such that the subsidiaries' business activities in Georgia may be imputed to Salem, and that these activities are so substantial, continuous, and systematic as to confer general jurisdiction over Salem. Second, Imageline argues that this Court also has specific jurisdiction over Salem because Salem distributed two of the allegedly infringing images to an attorney in Georgia through the crossdaily.com website.

3

Plaintiff bears the burden of establishing jurisdiction in this Court. Maxwell Chase Technologies, L.L.C. v. KMB Produce, Inc., 79 F. Supp. 2d 1364, 1366 (N.D. Ga. 1999). However, when the issue is to be decided at a preliminary stage of the proceedings without an evidentiary hearing, plaintiff need only show a *prima facie* case. Id. at 1366-67. Plaintiff may establish a *prima facie* case by presenting sufficient evidence to withstand a motion for directed verdict. Id. at 1367. The Court construes the allegations in the complaint as true to the extent that they are uncontroverted by defendant's evidence. Id. Where there are conflicts in the parties' evidence, the Court makes all reasonable inferences in favor of plaintiff. Id.

Imageline relies on the "transacting any business" prong of the Georgia long-arm statute, O.C.G.A. § 9-10-91(1), as the basis for asserting personal jurisdiction over Salem. That subsection confers personal jurisdiction over nonresident defendants "to the maximum extent permitted by procedural due process." Innovative Clinical & Consulting Serv's, 279 Ga. 672, 675 (2005)(quoting Coe & Payne Co. v. Wood-Mosaic Corp., 230 Ga. 58, 60 (1973)). Therefore, the Court's jurisdictional inquiry is limited to the constitutional

4

question of whether assertion of jurisdiction over Salem comports with the requirements of due process.

The Court considers two factors when determining if asserting personal jurisdiction over a nonresident defendant comports with due process: (1) whether the nonresident defendant has purposefully established minimum contacts with the forum, and (2) whether the exercise of jurisdiction would offend traditional notions of fair play and substantial justice. Carekeeper Software Dev. Co. v. Silver, 46 F. Supp. 2d 1366, 1369 (N.D. Ga. 1999).

Personal jurisdiction may be either specific or general. Specific jurisdiction exists when the cause of action relates to or "arises out of" a defendant's contacts with the forum. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984). General jurisdiction, on the other hand, arises when a defendant maintains "continuous and systematic" contacts with the forum state even when the cause of action has no relation to those contacts. Id. In this case, Imageline contends that the Court has

5

both general and specific jurisdiction over Salem. The Court will address each contention in turn.

## A.    General Jurisdiction

Imageline claims that Salem satisfies the "continuous and systematic" contacts requirement for general jurisdiction because, through various subsidiaries, it owns and operates five radio stations in the Atlanta area. Imageline contends that the business activities of these subsidiaries and their radio stations may be imputed to Salem because Salem and the subsidiaries "work together in a coordinated effort to maximize Salem's goal of '[r]eaching audiences interested in Christian and family content and conservative values on air, online, and in print.'" (Imageline's Br. in Resp. to Salem's Mot. to Dismiss at 6.)(Quoting Salem's website at http://www.salem.cc/index.aspx.) Imageline cites Salem's quarterly filing with the Securities and Exchange Commission (SEC) indicating that its net "broadcasting revenue" made up 87% of its total revenue for the quarter. Imageline also relies on evidence that Salem, OnePlace, and the other subsidiaries share the same principal office address in California, and that their officers and directors substantially

overlap, "such that Salem and its subsidiaries should be seen as one and the same."[2] (Id. at 10.)

The Court concludes that Imageline has failed to establish a *prima facie* case of general personal jurisdiction over Salem. "Generally, a foreign parent corporation is not subject to the jurisdiction of a forum state merely because a subsidiary is doing business there." Consol. Dev. Corp. v. Sherritt, Inc., 216 F.3d 1286, 1293 (11th Cir. 2000). Rather, "[w]here the 'subsidiary's presence in the state is primarily for the purpose of carrying on its own business and the subsidiary has preserved some semblance of independence from the parent, jurisdiction over the parent may not be acquired on the basis of the local activities of the subsidiary.'" Id. (quoting Portera v. Winn Dixie of Montgomery, Inc., 996 F. Supp. 1418, 1423 (M.D. Ala. 1998)). Thus, for Imageline to persuade the Court that it has general personal jurisdiction over Salem because of its subsidiaries' business activities in Georgia, it would have to show that the subsidiaries' corporate existence "was simply a formality,"

---

[2] Imageline also asserts that several additional Salem subsidiaries are registered to do business in Georgia, but it cites no evidence to support this assertion. (Id. at 11.)

7

and that they were "merely [Salem's] agent[s]." Id. at 1294. Imageline has failed to carry this burden.

The fact that Salem and its subsidiaries share a business address and that there is some overlap of officers and directors is insufficient to pierce the subsidiaries' corporate veil. See Doe v. Unocal Corp., 248 F.3d 915, 926 (9th Cir. 2001)("[I]t is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts")(quoting United States v. Bestfoods, 524 U.S. 51, 69 (1998)); Sun Trust Bank v. Sun Int'l Hotels, Ltd., 184 F. Supp. 2d 1246, 1268 (S.D. Fla. 2001)("[E]vidence of the sharing of a business address and some overlap of officers and employees between the entities . . . is insufficient to pierce the corporate veil")(citation omitted).

Nor does language on Salem's website justify ignoring the separateness of Salem and its corporate subsidiaries. The evidence is undisputed that Salem is merely a holding company, and that the radio stations whose business activities Imageline seeks to attribute to Salem for jurisdictional

8

purposes are owned by third-level subsidiaries that operate independently of

Salem. (Henderson Decl. ¶ 12.) Statements on Salem's website to the effect

that Salem and its subsidiaries are working together to achieve Salem's

business goals do not show that Salem exercises operational control over the

subsidiaries. See Abramson v. Walt Disney Co., 132 Fed. Appx. 273, 276

(11th Cir. 2005)("Evidence of operational control is not satisfied where the

foreign corporation's policy statements merely establish goals for its

subsidiaries and where the subsidiaries operate with a 'high degree of

autonomy'")(quoting State of Fla. v. Am. Tobacco Co., 707 So.2d 851, 854-55

(Fla.Dist.Ct.App. 1998)); see also Tomlinson v. H&R Block, Inc., 151 Fed.

Appx. 655, 659 (10th Cir. 2005)(error to infer from website that parent

corporation had contacts with forum state when evidence established that

parent was a holding company and all goods and services offered for sale were

offered by operating subsidiaries).


Finally, the fact that Salem's quarterly SEC filings include revenues

from its subsidiaries does not establish an agency relationship. See Epps. v.

Stewart Info. Servs. Corp., 327 F.3d 642, 650 (8th Cir. 2003)(fact that parent

included subsidiary's assets and liabilities as its own in SEC 10-K filings

9

insufficient to prove that parent did business in state where subsidiary located). Salem's quarterly SEC filings clearly state that the accompanying financial statements "include the Company *and its wholly-owned subsidiaries.*" (Form 10-Q, filed August 7, 2009, at 6.)(Emphasis added.) Thus, in reporting its revenues, Salem was not ignoring the line between it and its subsidiaries. See Heinrich v. Serv. Corp. Int'l, No. 09cv0524, 2009 WL 2177229 at *4 (W.D. Pa. July 22, 2009)(statement in parent corporation's Form 10-K about operation of businesses in forum state did not provide basis for exercising general jurisdiction over parent where it was specifically stated that references to the parent included its subsidiaries); Action Mfg. Co. v. Simon Wrecking Co., 375 F. Supp. 2d 411, 424 (E.D. Pa. 2005)(parent and subsidiary "were not ignoring the line between their separate corporate entities" when SEC proxy statement "specifically stated that it included information on the executive officers of [parent] and 'its principal subsidiaries'" and annual report "collectively referred to [parent] and its subsidiaries as 'we,' 'our,' and 'us'").

10

B.    Specific Jurisdiction

To satisfy minimum contacts for the purposes of specific jurisdiction, the contacts must (1) be related to plaintiff's cause of action; (2) involve some act of "purposeful availment" by the defendant of the privileges of the forum; and (3) be such that the defendant should reasonably anticipate being "haled into court there." Francosteel Corp. v. M/V Charm, 19 F.3d 624, 627 (11th Cir. 1994). Imageline contends that Salem satisfies these requirements because it distributed two allegedly infringing images in Georgia through the crossdaily.com website.

For the same reasons discussed above with regard to the exercise of general jurisdiction, the Court concludes that alleged infringement by distribution of images through the crossdaily.com website may not be attributed to Salem for purposes of establishing specific jurisdiction. The evidence shows that the crossdaily.com website is owned and operated by OnePlace, Salem's fourth-tier subsidiary. (Henderson Decl. ¶ 3.) Although Salem identifies crossdaily.com on its own website as a member of the "Salem Web Network," this does not suggest that the corporate distinctness of Salem and its subsidiaries, including OnePlace, should be ignored. Consequently,

11

Salem lacks the requisite minimum contacts with Georgia to support the exercise of specific jurisdiction.[3]

## II. OnePlace's Motion to Dismiss or Transfer

OnePlace moves to dismiss Imageline's complaint due to improper venue or, in the alternative, to transfer Imageline's action against it to the Eastern District of Virginia. OnePlace relies on the declaration of its executive vice president, Richard L. Killingsworth, who states that OnePlace is incorporated in Delaware, headquartered in California, and operates the crossdaily.com website primarily from its main office in Richmond, Virginia, where 75 of its 100 employees, including all employees involved with posting and maintaining images on crossdaily.com, are located. (Killingsworth Decl. ¶¶ 2-3.) Mr. Killingsworth further states that OnePlace is registered to do business in ten states, including Georgia, but that it has only one employee in Georgia, and that employee has no responsibility for or involvement with images posted on crossdaily.com. (Id. ¶ 3.) OnePlace maintains no office, mailing address, or telephone listing in Georgia, and makes only nominal

---

[3] Imageline seeks the opportunity to conduct discovery on the jurisdictional issue. In the absence of any evidence in the current record to support piercing the corporate veil of Salem's subsidiaries, the Court finds such discovery unwarranted.

sales within the state of Georgia as part of its national internet-based business. (Id. ¶¶ 12-15.)

According to Mr. Killingsworth, all records, documents, and files related to OnePlace's alleged use of any of the images at issue, as well as OnePlace's key witnesses with information regarding Imageline's complaint, are located in Richmond, Virginia; and OnePlace is unaware of any potential witnesses for either OnePlace or Imageline who reside in Georgia or any evidence supporting Imageline's claims that is located in Georgia. (Id. ¶¶ 6-10.) As a result, Mr. Killingsworth states, OnePlace would face a significant burden if forced to litigate this matter in Georgia, including the additional cost of travel and sending evidence to Georgia and the burden of providing testimony from out-of-state witnesses to a court in Georgia. (Id. ¶ 17.)

OnePlace contends that the foregoing facts establish that venue is improper in this district, and that this case should therefore be dismissed. Alternatively, OnePlace argues that the case should be transferred to the Eastern District of Virginia for the convenience of the parties and witnesses and in the interest of justice. In response, Imageline argues that venue is

proper in this district because OnePlace has conceded that it is subject to personal jurisdiction in this district. With regard to OnePlace's alternative motion for transfer, Imageline argues that its choice of forum is entitled to substantial deference and should not be disturbed, that Virginia is not a more convenient forum for this litigation, and that it would be inconvenient for Imageline to litigate this case in Virginia because it plans to move its office and business to Florida by the end of 2009.

The Court concludes that venue is proper in this district, but that a transfer is warranted for the convenience of the parties and witnesses. Under 28 U.S.C. § 1400(a), venue in a copyright action is proper in any district that may assert personal jurisdiction over the defendant. See Palmer v. Braun, 376 F.3d 1254, 1259 (11th Cir. 2004). Since OnePlace does not contest this Court's jurisdiction over its person, venue is proper here. Id. at 1260.

Under 28 U.S.C. § 1404(a), the Court may order transfer of a case from a district in which venue is appropriate to a district in which the matter could have been brought "for the convenience of the parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). There is no dispute that this case

14

could have been brought in the Eastern District of Virginia. Imageline is a Virginia corporation with its principal place of business in Ashland, Virginia, which is located in the Eastern District of Virginia. OnePlace, although incorporated in Delaware and headquartered in California, has its main office in Richmond, Virginia, also located in the Eastern District of Virginia. Accordingly, the Court must consider whether the Eastern District of Virginia would be a more convenient forum than the Northern District of Georgia in which to litigate this case.

Generally, the plaintiff's choice of forum is given great deference when considering a motion to transfer. Haworth v. Herman Miller, Inc., 821 F. Supp. 1476, 1479 (N.D. Ga. 1992). "However, where the forum selected is not the home district for any of the parties involved in the action, plaintiff's original choice of forum is entitled to less weight." Id. (citations omitted). In this case, the Northern District of Georgia is not the home district of either Imageline or OnePlace. Therefore, Imageline's choice of this district is not entitled to great deference.

15

As for the convenience of the parties, it is clear that Virginia is a more convenient forum than Georgia for both Imageline and OnePlace. Both parties have their main offices there,[4] and it is undisputed that most, if not all, of the relevant evidence is located there. Georgia, on the other hand, has only the most tenuous connection to this case, based solely on the fact that a Georgia attorney obtained two allegedly infringing images from the crossdaily.com website. This marginal connection to Georgia is substantially outweighed by both parties' significant connections to Virginia.[5]

The convenience of the witnesses also weighs heavily in favor of a transfer to Virginia. The only evidence submitted indicates that all of the key witnesses are located in Virginia. Other than the Georgia attorney who obtained two allegedly infringing images from the crossdaily.com website, the parties have identified no potential witnesses who are Georgia residents.

---

[4] Imageline claims that it is about to move its headquarters to Florida, but the Court cannot take into account a move that has not even taken place yet. Furthermore, a move to Florida will not make a Georgia forum any more convenient.

[5] Although convenience of counsel is not a relevant consideration, see Ramsey v. Fox News Network, LLC, 323 F. Supp. 2d 1352, 1356 (N.D. Ga. 2004), the Court notes that even Imageline's lead counsel is no longer located in Georgia, having recently notified the Court that she has moved her office to Nevada.

16

Finally, the interests of justice are best served by transferring this case to Virginia. In weighing this factor, the Court considers "access to evidence, availability of witnesses, the cost of obtaining witnesses, the possibility of a jury view, 'and all other practical problems that make trial of a case easy, expeditious and inexpensive.'" Moore v. McKibbon Bros., Inc., 41 F. Supp. 2d 1350, 1357 (N.D. Ga. 1998)(quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)). As previously discussed, virtually all the relevant evidence and potential witnesses in this case are located in Virginia. Consequently, the trial of this case in Virginia will be significantly easier, more expeditious, and less expensive than it would be in Georgia.

## Summary

For the foregoing reasons, the Court GRANTS defendant Salem Communications Corporation's motion to dismiss for lack of personal jurisdiction [#11] and GRANTS defendant OnePlace, LLC's alternative motion to transfer venue to the Eastern District of Virginia [#13]. Accordingly, the Court DISMISSES WITHOUT PREJUDICE plaintiff's complaint against defendant Salem Communications Corporation due to lack of personal jurisdiction, and DIRECTS the Clerk to transfer plaintiff's action

17

against defendant OnePlace, LLC, to the United States District Court for the

Eastern District of Virginia.

     IT IS SO ORDERED, this ___ day of November, 2009.

 

                                _____

                                Marvin H. Shoob, Senior Judge
                                United States District Court
                                Northern District of Georgia